IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| FRED CABRERA, #A0114810, | ) | CIV. NO. 17-00367 DKW-KJM |
|---|---|---|
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT |
| BENJAMIN HUBMER, *et al.*, | ) | |
| Defendants. | ) | |

Before the court is Defendants Malia Anderson's and Manny Tavares's Motion for Summary Judgment. Mot., ECF No. 33. Defendants assert that Plaintiff Fred Cabrera failed to exhaust available prison administrative remedies prior to filing this suit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *See* Mem. in Support, ECF No. 34. Cabrera has filed his Opposition, ECF No. 39, and Defendants have filed a Reply, ECF No. 44.

The court finds that Cabrera failed to exhaust his available administrative remedies prior to filing this action. There is no basis in the record to excuse this failure, and Defendants' Motion for Summary Judgment is GRANTED. The Clerk is DIRECTED to terminate this action without prejudice and close the file.

# I. **BACKGROUND**

Cabrera is in the custody of the Hawaii Department of Public Safety ("DPS").[1] The events that give rise to this action occurred on June 22, 2017 at the Oahu Community Correctional Center ("OCCC"). Cabrera alleges that Defendants violated the Eighth Amendment when they ordered him to help move an allegedly mentally ill inmate from one cell to another and then failed to intervene when this inmate attacked him. Cabrera seeks relief under 42 U.S.C. § 1983.

Although Cabrera signed the Complaint on July 2, 2017, the court did not receive it until July 27, 2017, with an in forma pauperis ("IFP") application, and notice of change of address showing that Cabrera had transferred to the Halawa Correctional Facility ("HCF").[2] *See* ECF Nos. 1-1, 1-3.

On August 25, 2017, the court dismissed the Complaint for failure to state a claim, with leave granted to amend. Order, ECF No. 6.

On September 20, 2017, Cabrera filed the First Amended Complaint ("FAC"). FAC, ECF No. 7. The court ordered the FAC served on Defendants

---

[1] Cabrera is incarcerated at the Saguaro Correctional Center ("SCC"), located in Eloy, Arizona.

[2] Cabrera says he transferred to HCF on July 31, 2017, but his mailing documents and notice of change of address indicate that he was there on July 25, 2017. *See* ECF No. 3.

Anderson and Tavares and dismissed all other claims against all other Defendants on September 22, 2017. Order, ECF No. 8.

On November 2, 2017, Cabrera was transferred from HCF to SCC. *See* ECF No. 20.

On December 22, 2017, Defendants filed an Answer to the FAC that asserted, inter alia, the affirmative defense of failure to exhaust administrative remedies. Answer, ECF No. 21, PageID #87 (Eleventh Defense). In response, Cabrera filed a "Motion in Opposition to Motion to Dismiss For Failure to Exhaust." Mot., ECF No. 30. Because Defendants had not moved to dismiss (or for summary judgment), the court took no action on this motion. *See* ECF No. 32.

On April 27, 2018, Defendants filed the present Motion for Summary Judgment, seeking dismissal of this action for Plaintiff's failure to exhaust available prison administrative remedies. Mot., ECF No. 34. Cabrera filed his "Motion in Opposition For Failure to Dismiss," on June 1, 2018, which is construed as his Opposition (rather than a separate motion). Pl. Opp'n, ECF No. 39. Defendants have filed a Reply. ECF No. 44.

A hearing is not necessary to resolve Defendants' Motion. *See* Local Rule LR7.2; LR99.16.2 (designating all hearings in pro se prisoner cases as non-hearing motions unless otherwise ordered by the court).

## II. LEGAL STANDARD

Summary judgment is proper when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" when a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). That is, the moving party must demonstrate through authenticated evidence that the record forecloses the possibility of a

reasonable trier-of-fact finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court must view all evidence and inferences in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

If the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). This requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat a summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, *see* Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a pro se litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge, set forth facts that would be admissible into evidence, and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III. DISCUSSION

**A.    42 U.S.C. § 1997e(a)**

The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (quoting § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted). Requiring exhaustion allows prison officials "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) ("a prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of the litigation").

Regardless of the relief sought, "[t]he obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005)(citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S. Ct. at 1862. Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738).

*Ross* outlined three limited "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. They are when: (1) the "administrative procedure . . . operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60 (citations omitted). Beyond

7

these circumstances, the mandatory language of § 1997e(a) "foreclose[es] judicial discretion," which "means a court may not excuse a failure to exhaust, [or] even to take [special] circumstances into account." *Id.* at 1856-57.

Failure to exhaust is an affirmative defense. *Bock*, 549 U.S. at 216. The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). If the defendant carries his burden, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

**B.     DPS Administrative Remedies:  PPM Policy No. COR.12.03**

The DPS's grievance procedures are contained in its Corrections Administration Policy and Procedures Manual ("PPM"), Policy No. COR.12.03 ("Inmate Grievance Program," eff. July 1, 2015). *See* Defs.' Concise Statement of Facts ("CSF"), Ex. A, ECF No. 35-2. Policy No. COR.12.03.8 sets forth a three-step grievance procedure that applies to all inmates regarding incidents that arise while an inmate is incarcerated at a facility in Hawaii. *See id.*, COR.12.03.4.1.

Generally, a prisoner must file an initial grievance within fourteen days of the incident grieved, subject to certain exceptions. *See* COR.12.03.8.1-2. If the inmate is unsatisfied with the prison's response, or fails to receive a timely response, he may appeal to the Warden/Branch/Core Program Administrator, and if still unsatisfied, to the Division Administrator. *Id.*, COR.12.03.8.10. If a prisoner "reasonably believes the issue is sensitive," or fears for his safety if he pursued the normal grievance procedure, he may submit a grievance directly to the Division Administrator in a sealed envelope marked "Confidential." *Id.*, COR.12.03.8.3(b). Inmates may also file emergency grievances, defined as "[g]rievances of an exigent nature requiring an immediate resolution or a more expedited process." COR.12.03.8.3(c). The Inmate Grievance Program explicitly notifies prisoners that completion of all three steps is normally required before filing litigation in the federal courts. *See* COR.12.03.4.7.

**C.     Analysis**

Defendants initially asserted that Cabrera failed to file a Step 3 grievance regarding his claims and therefore failed to exhaust his administrative remedies. *See* Mem. in Support, ECF No. 34-1, PageID #117-18; Kimoto Dec., ECF No. 35-1 ("I . . . found that there were no Step Three Grievances related to the alleged assault on June 22, 2017."). At the court's direction, Defendants later clarified that

9

Cabrera has filed *no* grievances regarding the June 22, 2017 incident. *See* Response, ECF No. 38; Laux Dec., ECF No. 38-1 ("Based on my review, Mr. Cabrera has not submitted any grievances related to a June 22, 2017 incident."). Defendants carry their burden to demonstrate that Cabrera failed to exhaust available administrative remedies before initiating this action.

The burden therefore shifts to Cabrera to come forward with evidence showing that Defendants are simply wrong, or that "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

Cabrera first argues that he feared retaliation if he pursued a grievance while he remained housed at OCCC in the same module where Defendants are assigned to work. Pl. Opp'n, ECF No. 39. He states that he remained afraid "until I was moved to [HCF]." *Id.* "[A] prisoner is excused from the exhaustion requirement in circumstances . . . in which a prisoner has reason to fear retaliation for reporting an incident." *Rodriguez v. Cty. of Los Angeles,* 891 F.3d. 776, 792 (9th Cir. 2018) (citing *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). To establish that the fear of retaliation is sufficient to excuse exhaustion, "the prisoner must show that (1) 'he actually believed prison officials would retaliate against him if he filed a

grievance'; and (2) 'a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance.'" *Id.* (quoting *McBride*, 807 F.3d at 987).

First, Cabrera provides no details to establish *why* he believed Defendants would retaliate against him. He alleges no actions or statements by Defendants or others that communicated any threat of retaliation, much less a threat of such severity that it would deter a reasonable prisoner from filing a grievance. Nor does he explain why, if he feared retaliation, he was unable to file a Confidential Grievance in a sealed envelope directly to the Division Administrator pursuant to COR. No. 12.03.8.3(b) while he was at OCCC.

Second, by the time Cabrera mailed the Complaint to the court, he had already transferred to HCF. He does not explain why he did not pursue the grievance process when he arrived at HCF and, by his own admission, no longer feared retribution from Defendants, who were still at OCCC. Although such a grievance would have been late, it may have been accepted with an explanation that he reasonably feared retaliation while he was housed at OCCC. Cabrera, however, submits nothing showing that he attempted to file *any* grievances

regarding this incident while he was confined at HCF, and that these attempts were thwarted.

Cabrera asserts that he "tried to initiate the grievance process but was move[d] to Arizona facility on November 2, 2017," suggesting that he did not have time to initiate the grievance process at HCF. Pl. Opp'n, ECF No. 39. But Cabrera had three months to pursue a grievance at HCF *before* that transfer. During that time, Cabrera filed the Complaint, an IFP application, a notice of change of address, the FAC, and a request for counsel. *See* ECF Nos. 1-3, 7, 11. These documents were not confidential and would have given notice to HCF prison officials that Cabrera was pursuing litigation against OCCC officials. Yet Cabrera does not allege that he feared intimidation or retaliation while at HCF, or claim that any HCF official impeded his attempts to pursue a grievance.

Finally, Cabrera says that he is now "trying [to pursue a grievance] from Arizona facility but is getting a lot of trouble because I keep having negetive [sic] feed back to file it by the contr[a]ct monitor who issues it out." Pl. Opp'n, ECF No. 39. But Cabrera provides no evidence that he has attempted to grieve the incident since he was transferred to SCC, documents that show he has been prevented from doing so, or the allegedly negative responses he received. *See* Pl.

CSF, ECF No. 40 (containing four documents regarding medical treatment he has received since the incident).

Cabrera fails to show that prison officials prevented him from pursuing a grievance "through machination, misrepresentation, or intimidation," that is, fear of retaliation. *Ross*, 136 S. Ct. at 1860. Cabrera therefore has not carried his burden of showing that administrative remedies were unavailable to him before he commenced this action, through intimidation or otherwise.

## IV. **CONCLUSION**

Defendants Anderson's and Tavares's Motion for Summary Judgment is GRANTED. This action is DISMISSED without prejudice because of Cabrera's failure to exhaust his available prison administrative remedies before he brought

///

///

///

///

13

this action to court.  *See* 42 U.S.C. § 1997e(a).  The Clerk is instructed to enter judgment and terminate this action.  Any pending motions are denied as moot.

IT IS SO ORDERED.

DATED: July 6, 2018 at Honolulu, Hawaii.



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

---

*Fred Cabrera v. State of Hawaii, et al.*; Civil No. 17-00367 DKW-KJM; **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Cabrera v. State*, 1:17-cv-00367 DKW-KJM; Exh '18 Cabrera 17-367 dkw (grt sj unexh. no griev filed)